# FILED

OCT 29 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

Miss A. A. Israel #bj-0177
<small>Name and Prisoner Booking Number</small>

Mule Creek State Prison
<small>Place of Confinement</small>

B-10-246L, P.O. Box 409040
<small>Mailing Address</small>

Ione, CA 95640
<small>City, State, Zip Code</small>

(Failure to notify the Court of your change of address may result in dismissal of this action.)

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF CALIFORNIA

A. A. Israel                                    )
<small>Full Name of Plaintiff</small>                                 )
                    Plaintiff,                 )
                                               )
            v.                                 )   CASE NO. 2:21-cv-0262-EFB P
                                               )   (To be supplied by the Clerk)
(1) Rabbi Shmary, 'A'-Facility Chaplain       ,)
<small>Full Name of Defendant</small>                                )
                                               )
(2) Lance Eshelman (CRM), Shmary's Supervisor ,)
                                               )   CIVIL RIGHTS COMPLAINT
(3) Patrick Covello, Warden, Eshelman's Supervisor ) BY A PRISONER
                                               )
                                               )
(4) B. Holmes, Chief Deputy Warden of MCSP    ,)   ☐ Original Complaint
                    Defendant(s).              )   ☐ First Amended Complaint
<small>☑ Check if there are additional Defendants and attach page 1-A listing them.</small> ) ☑ Second Amended Complaint

## A. JURISDICTION

1.  This Court has jurisdiction over this action pursuant to:

    ☑ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983

    ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

    ☐ Other: _____.

2.  Institution/city where violation occurred: MULE CREEK STATE PRISON, Ione

Additional Defendants

(5) M. Safonov, Religious Review Committee Member

(6) Imam Muhammad, Religious Review Committee Member

(7) Charles Richey, Supervisor of Religious Programs Overnight

(8) Alex Lainez, Religious Review Committee Member

(9) Mike Williams, Ass. Warden Central/Religious Services

(10) Damon Huser, Ass. Warden Religious Program/Housing Facilities A,B&C

(11) Michael Lee, Correctional Food Manager

(12) Kathleen Allison, Secretary of C.D.C.R.

1 - A

## B. DEFENDANTS

1. Name of first Defendant: __Rabbi Shmary__. The first Defendant is employed as:
   __'A'-Facility Chaplain__ at MULE CREEK STATE PRISON _(MCSP)_.
   (Position and Title) (Institution)

2. Name of second Defendant: __Lance Eshelman__. The second Defendant is employed as:
   __Community Resources Manager (CRM)__ at MULE CREEK STATE PRISON _(MCSP)_.
   (Position and Title) (Institution)

3. Name of third Defendant: __Patrick Covello__. The third Defendant is employed as:
   __Warden__ at MULE CREEK STATE PRISON _(MCSP)_.
   (Position and Title) (Institution)

4. Name of fourth Defendant: __B. Holmes__. The fourth Defendant is employed as:
   __Chief Deputy Warden__ at MULE CREEK STATE PRISON _(MCSP)_.
   (Position and Title) (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?    ☑ Yes    ☐ No

2. If yes, how many lawsuits have you filed? __3__. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: AKIVA ISRAEL                v. D. WOODALL, et al.
      2. Court and case number: Amador County Superior Court   20-SC-03806.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)
         Dismissed in court without prejudice.

   b. Second prior lawsuit:
      1. Parties: AKIVA A. ISRAEL           v. LVN CARTER, et al.
      2. Court and case number: Amador County Superior Court   21-SC-3881.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)
         Pending

   c. Third prior lawsuit:
      1. Parties: AKIVA ISRAEL              v. TILLERY
      2. Court and case number: Amador County Superior Court   21 SC 3883.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)
         Pending

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

2-B. Defendants, CONT.

5. Name of fifth Defendant: M. Safonov. The fifth Defendant is employed as: Chaplain at MCSP.

6. Name of Sixth Defendant: Imam Muhammad. The Sixth Defendant is employed as: Chaplain at MCSP.

7. Name of Seventh Defendant: Charles Richey. The seventh Defendant is employed as Religious Programs Oversight Supervisor at MCSP.

8. Name of eighth Defendant: Alex Lainez. The eighth Defendant is employed as Chaplain at MCSP.

9. Name of ninth Defendant: Mike Williams. The ninth Defendant is employed as Ass. Warden at MCSP.

10. Name of tenth Defendant: Damon Huser. The tenth Defendant is employed as Ass. Warden at MCSP.

11. Name of eleventh Defendant: Michael Lee. The eleventh Defendant is employed as Correctional Food MGR at MCSP.

12. Name of twelth Defendant: Kathleen Allison. The twelth Defendant is employed as: Secretary for C.D.C.R.

## D. CAUSE OF ACTION

### CLAIM I

1. State the constitutional or other federal civil right that was violated: *The First Amendment to the U.S. Constitution*

2. **Claim I.** Identify the issue involved. Check **only one**. State additional issues in separate claims.

☐ Basic necessities          ☐ Mail              ☐ Access to the court       ☐ Medical care
☐ Disciplinary proceedings   ☐ Property          ☒ Exercise of religion       ☐ Retaliation
☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

*I could NOT perform religious exercise and/or observance, as SHMARYAHU BROWNSTEIN (AKA: Rabbi Shmary), Imam Muhammad, M. Safonov, Shmary's Supervisor (Lance Eshelman), Charles Richey, Alex Lainez and Michael Lee, each FAILED, as Members of the Religious Review Committee, to make, document, and notify me in writing, by NOT providing me a copy of my CDCR Form 303, of their decision regarding my religious diet eligibility, within 30 calendar days, after I requested KosHER meals via said form. Although, SHMARY informed me that inmates, even of non-Jewish faith, who made said request Do receive said notice of the decision, in the manner described above, within 30 calendar days. Rabbi Shmary further stated that I "shall" receive notice of the decision for request to be in Kosher Diet Program in time for observance of the Holiest Days in Judaism: Rosh Hashariah and Yom Kippur. Aforementioned Religious Review Committee members imposed upon me, to consume unclean meals on Yom Kippur and Rosh Hashanah.*

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
*Due to length of time, some 222 days, a substantial burden on my religious exercise/freedom was exacerbated. Unreasonably limited and imposed upon my religious exercise.*

5. **Administrative Remedies:**

   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                                       ☒ Yes  ☐ No

   b. Did you submit a request for administrative relief on Claim I?                          ☒ Yes  ☐ No

   c. Did you appeal your request for relief on Claim I to the highest level?                 ☐ Yes  ☒ No

   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. *Because at 1st Level of Review, Chief Deputy Warden APPROVED Grievance # 70311, C.D.C.R. Considers administrative remedies exhausted.*

## CLAIM II

1.  State the constitutional or other federal civil right that was violated: __The Fourteenth Amendment__
    __to the U.S. Constitution__.

2.  Claim II. Identify the issue involved. Check only one. State additional issues in separate claims.
    ☐ Basic necessities              ☐ Mail            ☐ Access to the court      ☐ Medical care
    ☐ Disciplinary proceedings       ☐ Property        ☑ Exercise of religion     ☐ Retaliation
    ☐ Excessive force by an officer  ☐ Threat to safety ☐ Other: _____.

3.  Supporting Facts. State as briefly as possible the FACTS supporting Claim II. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.
    Shmary acted with an intent or purpose, prior to and after, 9-1-20, to discriminate
    against me because of my gay/transgender-female Jewish status. At the interview, conducted on 9-1-20,
    Shmary made comments indicative of homophobic consciousness, such as: "transgenders and Torah aren't a godly
    pairing," "same-sex sex is an abomination," "Homosexuality is against Torah and you're homosexual," "to be
    a Torah-Jew, you must not be dark or darkened by temptations of flesh," etc. Following this interview,
    Shmary aggressively refused to communicate about my sincerely held religious beliefs and my need for spiritual
    aid council at the prison, including my request for a religious dietary meal plan. I advanced numerous
    administrative requests for interview to SHMARY, in which I asked him: ". . . is it b/c I'm a fag
    or tranny or of the wrong skin shade that's causing your animus against me?" Shmary never replied. He, therefore,
    failed to refute the presence of prejudice haunting his dissimilar treatment toward me. Again, Shmary's series of
    suggestive answers and comments indicate his frame of mind, and I pressed him many times via administrative
    correspondence as to why Jews (as well as non-Jewish heterosexual prisoners) of gay sexual orientation receive
    timely responses to their requests for religious diets. I did not. Despite being a natural-born Jew and a
    member of a Jewish Organization, I (a Jew) had to file Grievance #70311 to be added to the Kosher Diet Program.
    Additionally, Rabbi Raitman with the Jewish Community Foundation of Los Angeles had to personally intervene
    in 12-8-20 or thereabout to secure respect for my religious rights as regards my placement into the Kosher
    Diet Program. Furthermore, some 222 days from my submission of CDCR Form 3030-B on 9-1-20, I still have NOT
    received a KOSHER DIET CARD, institutional chrono or related documentation.

4.  Injury. State how you were injured by the actions or inactions of the Defendant(s).
    Discriminatory practice coerced me to injure my body by cruel enforcement of unclean consumption of unclean
    food items, meaning that prison staff interfered with my exercise of FIrst Amendment rights and encouraged
    me to be non-religious and/or choose one religious practice over another. Due to length of time, some 222 days,
    a substantial burden on my religious exercise was exacerbated.

5.  Administrative Remedies.
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                              ☑ Yes   ☐ No
    b.  Did you submit a request for administrative relief on Claim II?                ☑ Yes   ☐ No
    c.  Did you appeal your request for relief on Claim II to the highest level?       ☐ Yes   ☑ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you
    Because at 1st Level of Review, Chief Deputy Warden APPROVED Grievance #70311, C.D.C.R. considers
    __administrative remedies exhausted.__

## CLAIM III

1.  State the constitutional or other federal civil right that was violated: _____
The Religious Land Use and Institutionalized Persons Act of 2000 .

2.  Claim III. Identify the issue involved. Check only one. State additional issues in separate claims.

☐ Basic necessities            ☐ Mail              ☐ Access to the court       ☐ Medical care
☐ Disciplinary proceedings     ☐ Property          ☒ Exercise of religion      ☐ Retaliation
☐ Excessive force by an officer ☐ Threat to safety ☐ Other: _____

3.  Supporting Facts. State as briefly as possible the FACTS supporting Claim III. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.
During interview, 'A'-Facility Chaplain (Rabbi Shmary) stated that, within 30 calendar days, I "shall" receive a written notice of the decision for request made via CDCR Form 3030, to be added to Kosher Diet Program. Almost 200 days later, and counting, I still have NOT received an institutional chrono or any formal written notice of said decision. Shmary failed to answer to multiple e-mails from my clinicians, some 12 GA/CDCR-22 requests, and is still imposing on my religious practice, primarily by his aggressive refusals to communicate about my religious-dietary needs at the prison.

4.  Injury. State how you were injured by the actions or inactions of the Defendant(s).
Institution heads imposed a substantial burden on my religious exercise. Furthermore, their deliberate indifference to my religious need for Kosher meals caused pain and suffering, and violated the integrity of my exercise of religion.

5.  Administrative Remedies.
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                    ☒ Yes   ☐ No
    b.  Did you submit a request for administrative relief on Claim III?       ☒ Yes   ☐ No
    c.  Did you appeal your request for relief on Claim III to the highest level?  ☐ Yes   ☒ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. Because at 1st Level of Review, Chief Deputy Warden APPROVED Grievance
#70311, CDCR considers administrative remedies exhausted. .

If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.

CLAIM IV

1

The Fourteenth Amendment to the U.S. Constitution ("equal protection of the law")

2

Other: Discrimination

3

LANCE ESHELMAN (LE), as Head of the Office of the Community Resources Manager (CRM), is Rabbi Shmary's Supervisor and, together with SHMARY, he refused to provide me with a diet conforming to Jewish religious beliefs for approximately 222 days following my submission of C.D.C.R. Form 3030-B on 9-1-20. From 10-10-20 to 1-1-21, LE notified religious dietary applicants that their institutional correspondence to his office "shall" receive a response within 3 business days of their requests (locally known as GA-22s). Yet, from 10-10-20 to 1-1-21 (or thereabout), LE aggressively refused to communicate about my religious dietary needs at the prison. He also failed to explain why he had refused to direct his subordinate staff to timely reply to my correctly completed and timely filed C.D.C.R. Form 3030-B on 9-1-20, immediately following my declaration to said staff that I am a transgender-female Jew whose sexual orientation is homosexual. I sent GA-22s to LE, LE's bosses (Warden PATRICK COVELLO as well as Chief Deputy Warden B. HOMLES), and other staff members; forms whereon I stated my question/concern this way: "Is deprivation of my religious diet (including notification thereof, either approval or disapproval) due to your anti-gay animus?" At M.C.S.P., some staff are open with their homophobia and sexism; moreover, said staff are sufficiently comfortable with their bigotry that they make implied as well as explicit homophobic comments in my presence, some directed against me. Generally, a policing culture persists at M.C.S.P. that permits continuous ridiculing, belittling and discriminatory targeting of gay prisoners, transgender female inmates and other incarcerated LGBTQA+ communities. In acute distress, I asked aforementioned staff, via GA-22s, if above-referenced culture has contaminated their actions to deprive me of a diet conforming to my sincerely held Jewish religious beliefs. Again, from 10-10-20 to 1-1-21 (approx.), said staff affirmed, by aggressively collective silence (a "Code of Silence") that violations    : to my religious rights was based on generalized fear, dislike of and/or distaste for transgender female Jews at M.C.S.P. who are gay. No person of good sense, certainly no reasonably prudent individual, in any position would fail to reject said charges, formally or informally, let alone a CRM, a CDW or the head of an institution. In fact, in my possession are communications from some staff refuting in strong terms that they are gay-bashing in the execution of their duties at the prison. To date, LANCE ESHELMAN, SHMARY, PATRICK COVELLO, B. HOLMES, the Supervising Correctional Cook, the Correctional Food Manager (CFM) & others have NEVER challenged, contested or disavowed my description of their acts as sex-based. Also, they've never sent me any assurances that they did NOT rely on sex/gender/sexual orientation in their actions with respect to my formal request for a Jewish religious diet plan. On one such GA-22 to LE, I stated: "Why are male Jewish prisoners at M.C.S.P. provided timely replies to religious dietary requests but female Jewish prisoners are not, the latter of which I am a member?" I went on to state that the foregoing discrepancy causes me distress, given that at M.C.S.P., neither safety nor security require the aforementioned unequal treatment based on gender/sex/sexual orientation in respect to religious dietary requests coming from within the inmate population. In reality, said staff implicitly admitted that sex/gender/sexual orientation is a primary factor in deciding to non-comply with Government Rules and Regulations as regards religious dietary needs intended for and made by non-heterosexual male & female inmates of Jewish Faith at M.C.S.P., such as myself.

4

Above discrimination caused acute distress, acute emotional distress, pain and suffering, injury to my body, real harm to the flesh, avoidable trauma to my spiritual welfare, and other substantial injuries to self and spirit, each against me and due to length of time, some 222 days, I suffered and continue to suffer. Due to previously mentioned length of time, 222 days or thereabout, a substantial burden on my religious exercise was exacerbated, one fueled by hate and outstanding discriminatory practices.

5

a. Yes, b. Yes, c. Yes, d. No

d. Because at 1st Level of Review, Chief Deputy Warden APPROVED Grievance #70311, C.D.C.R. considers administrative remedies exhausted.

6

<u>Claim V</u>

1

The Establishment Clause of the First Amendment to the U.S. Constitution.

2

Exercise of Religion

3

<u>Prior to, and after, 9-1-20, Rabbi Shmary and Lance Eshelman</u> continue to deny me access to a Jewish (i.e., the Tanach) Bible, <u>without ANY</u> rational explanation. Chaplains of the Protestant, Catholic, Muslim, and Native American faiths at MCSP provide inmates of above religious practices with their respective Sacred texts (or 'bibles'), but I am, to this day, denied my Jewish Bible. CDCR & MCSP, define Jewish Faith as a "preferred faith," meaning that Rabbi Shmary has a paid prison chaplain position and, consequently, receives extra money allotted to his office to pay for the religious items of Jewish practice, especially 'bibles.' Based on information and belief, Rabbi Shmary has failed to utilize his assigned budget to purchase me a bible, even though each of his aforesaid counterparts has done so for their heterosexual worshippers. Based on Shmary's homophobic invective detailed in Claim II of this complaint (SEE PG.4), SHMARY denies me access to The Tanach, due to my transgender-female status within the gay Jewish community.

According to Sergeant BASKERVILLE, Eshelman <u>IS</u>

7

1   <u>Claim V, CONT.</u>

2   aware of my serious religious concerns regarding

3   SHMARY), but he (Enhelman) continues to

4   support SHMARY's preferred religious treatment

5   of Jews who are "straight men."

6   Enhelman, therefore, as SHMAR)'s Supervisor,

7   is ennabling & empowering him, to violate

8   my religious rights, and permit hostility toward me

9   to increase.

                      <u>4</u>

11   state actions complained of herein grant denominational

12   preferenle to Jews who are "straight men," without

13   furthering a compelling interest, while denying me

14   access to a Jewish Bible ("Tanach"), a violation

15   to my right to practice my religion.

                              <u>5</u>

17                             a. yes

18                             b. yes

19                             c. yes

                                d. N/A

Claim VI

1. My First Amendment right to be free from retaliation for filing a grievance, and/or petition government for redress of grievances.

2. _____Retaliation_____

3. LANCE ESHELMAN, M. SAFONOV, and SHMARY retaliated against me for filing this Complaint (# 2:21-CV-0262-EFB). On or around September, 2021, SAFONOV confronted me at Yard & threatened me in this manner: "Mr. Israel, you don't need a kosher diet. My boss is pissed for you filing your little 1983 and, if you know what's good for you, stop causing my boss trouble. He & I have ways of making life for you here a living Hell." In response, I stated: "Lance Eshelman is your boss," to which SAFONOV affirmed. I then showed SAFONOV my TRANSGENDER ACCESS CARD and informed him to use my correct FEMALE pronouns, and honorific, this being "Miss." In response, SAFONOV stated to me, his eyes rolling, "MR. ISRAEL, I don't go for those SAN FRANCISCO-values. Now you remember what I told you, Mister Israel." Then he left. Not long after the above-mentioned verbal assault, conditions for me at MCSP deteriorated even further and hostility towards me continues to increase. This culminated in COVELLO, HOLMES, WILLIAMS and HUVER ordering their subordinate staff to deny me ALL physical access to Law Library, despite being on approved P.L.U.-List, and initiating proceedings to label me as: "TROUBLEMAKER" and place me on a list of inmates ripe for retaliatory fervor. In my possession are SWORN

8

*Claim VI, Cont.*

DECLARATIONS from multiple witnesses substantiating the foregoing.

4. Due to totality of retaliatory practices, I suffered to the point of near suicide, went on HUNGER STRIKE for 18 days, missed court deadlines due to loss of ALL physical LAW LIBRARY access, cannot practice my faith, and both my ability and my right to petition government for redress of grievances has been left toothless.

5. a. Yes
   b. Yes
   c. Yes
   d. N/A

8 - A

## Claim VII

1. The Fourteenth Amendment to the U.V. Constitution.

2. <u>Exercise of Religion</u>

3. In January, of 2021, Imam Muhammad met with me. During this meeting, I shared with Mr. Muhammad my concerns over Rabbi Shmary's anti-gay animus. I specifically quoted SHMARY's remarks, including: "transgenders and Torah aren't a godly pairing," "Homosexuality is against Torah, and you're homosexual," "Same-sex sex is an abomination," etc. The Imam's response haunts me to this day, as he stated to me: "Well, just be thankful we can't stone you anymore. You lay with men. You admitted this. So, even the Prophet tells us that, "at which point I interrupted the man, in disbelief, "That is deeply disturbing what you just said, Sir. It's not funny." Mr. Muhammad then stated to me: "I'm being serious." "You, Sir," I replied, "are a disgusting bigot. Are you really that ignorant of our sacred constitutional rights?" Muhammad then stated: "I don't view the constitution either as sacred or necessary." The exchange terminated. Note that Imam Muhammad is one of the Religious Review Committee members who imposed upon me, to consume unclean meals on Yom Kippur & Rosh Hashanah for contributing to the failure detailed in CLAIM I of this complaint (SEE PG. 3).

Claim VII, Cont.

4. Injury. Discriminatory practice, prejudice, homophobia, transphobia, and gender-based sexual orientation caused Religious Review Committee Members to violate my religious rights by specifically violating my right to free exercise of religion, in part by denying me a diet conforming to Jewish religious beliefs, denying me access (STILL) to a Jewish Bible "Tanach," denying me access to equal treatment of faith, inhibiting my ability to engage in worship & religious study, failing to provide me a Chaplain as well as a Religious Review Committee that can provide me the same services that the paid Chaplains provide to straight men of the favored faiths, inhibited my receipt of religious articles and sacred canon, inhibited my ability to engage in group worship by not granting me equal access to religious study and group worship and retaliation against me for exercising my 1st Amendment right to petition the government for redress of each aforementioned grievance.

5. a. yes
   b. yes
   c. yes
   d. N/A

9 - A

CLAIM VIII
1

The Establishment Clause of the First Amendment to the U.S. Constitution
2

Exercise of Religion
3

Eshelman, Shmary, Covello, Homles and others committed enforced encouragement when they coerced me to follow a certain denomination of Judaism, namely cultural Judaism, according to which a Jew need not risk significant injury, either bodily or otherwise, by feeding on unclean meals during Rosh Hashanah and Yom Kippur. Shmary, especially, is familiar with cultural Judaism given his rabbinical expertise and knew from our interview on 9-1-20 that I am NOT just a cultural Jew but, indeed, a Natural-Born Jew who exercises her right to follow the practices of observant conservative Judaism. Shmary subjectively knew of and disregarded the problem, namely were I not provided a diet conforming to Jewish religious belief in time for the High Holy Days, in 2020, I stood to suffer severely from injuries to the flesh and spirit. He had actual notice of the problem, given our 9-1-20 interview as well as his rabbinical expertise. The problem was so obvious that he must have been aware of it, for (ostensibly) he is not incompetent in Jewish religious practice. I put said staff on notice of the unconstitutional deprivation by filling administrative requests for interview and an appeal. The combined effects of deprivations based on discrimination exerted a cumulative effect that gave prison officials the de facto power to encourage and/or discourage me to be religious, and/or choose one religion over another.
4

Staff used enforced encouragement to harm the integrity of my body, injury fixed in time as I can't go back in time to un-consume the unclean; multiplied my corporeal sins, disgraced my standing before God and caused significant pain and suffering, by the above and violating the integrity of my exercise of faith.
5

a. Yes

b. Yes

c. No

d. Because at the 1st Level of Review, Chief Deputy Warden APPROVED Grievance #70311, C.D.C.R. considers administrative remedies exhausted.

10

## CLAIM IX

1. The First Amendment to the U.S. Constitution

2. Exercise of religion

3. Secretary Kathleen Allison is aware of systemic failings within C.D.C.R. of respecting inmates' religious rights. ALLISON is responsible, as Chief Hiring Authority, for creating a prison system where I (and my fellow inmates) of "favored faiths" are NOT provided the very fundamental things required for religious practice/exercise but are denied, time and again. As shall be described more fully upon discovery, Allison, Covello, Holmes, Huser and Williams each failed to address the on-going systemic problems that led to the violations of my rights. Indeed, when prison policies ARE the problem, those with the power to change those policies must bear the responsibility for their actions.

4. Injury. I still CANNOT practice my faith as required by religious law at this prison. my immortal soul may go to Hell, as a result or be subject to infernal transmigration of the soul.

5. a. yes
   b. yes
   c. yes
   d. N/A

## E. REQUEST FOR RELIEF

State the relief you are seeking:

WHEREFORE, Plaintiff prays: 1. That the Court issue a declaratory judgment that the Defendants' actions complained of herein violate Plaintiff's First and Fourteenth Amendment-Rights under the U.S. Constitution, the Religious Land Use and Institutionalized Persons Act of 2000, and as otherwise alleged herein; 2. That the Court issue an injunction ordering SHMARY, ESHELMAN, COVELLO, HOLMES, or thew their agents to: a. provide Plaintiff with a 'Bible,' meaning copies of the Torah and Tanach given that Plaintiff faces significant barriers to the practice of her religion without access to said religious texts; b. ensure Plaintiff is released for worship on time; c. provide consistent spiritual support; d. cease and desist from hindering Plaintiff's ability to enjoy consistent practice of her blood-faith, in part, by SHMARY approving ducats for worship and

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ____10.01.2021____
DATE                                                    SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

1   E. REQUEST FOR RELIEF, Continued

2

3   ~~assisting Plaintiff in the ordering of religious items;~~

4   e. add Plaintiff back to the Kosher Diet Program immediately;

5   f. issue Plaintiff her Religious Diet Card so that she may show it to Dining Staff, in order

6   to receive her approved Kosher meal;

7   g. provide Plaintiff with a CDCR Form 3030-B certifying her placement on, and agreement

8   of, the Religious Diet Program Agreement;

9   h. provide Plaintiff with written documentation explaining, in clear detail, as to which

10  ritualistic practice within the Jewish Religious Canon are CDCR Staff using to make

11  legally significant determinations on kosher compliance;

12  i. cease and desist from significantly hampering Plaintiff's ability to practice her

13  religion, in part, by providing her with documentation certifying that her religious

14  texts are not ~~confused~~ <sup>to be</sup> confused with her general-interest books for the purpose

15  of determining book-limit quota for her allowance of property in her living quarters;

16  j. provide written explanations as to why Defendants did not disavow charges identifying

17  them as gay-bashing anti-Semites;

18  k. immediately arrange for the Plaintiff's need for religious diet or other follow-up

19  transfer protocol to be finalized by a prison administrator of appropriate rank in the

20  event of transfer to a new institution;

21  l. re-train staff or terminate any member of staff immediately incapable of behaving

22  in a manner without homophobia, transphobia as well as other variants of rank bigotry,

23  through their individual and collective acts, practices and omissions as complained of herein

24  herein;

25  m. return improperly seized religious items to Plaintiff immediately; to wit, these being:

26  2 bottles of Arabian Musk, 1 bottle of Polo Red Musk and 1 bottle of Paco One Musk;

27  n. assist Plaintiff with ordering basic religious items in time for holy observance ;

28

12 - A

E. REQUEST FOR RELIEF, Continued

3. That the Court enter a ~~judgment~~ judgment declaring that defendants, and each of them, through the individual and collective acts, practices, and omissions complained of herein, have subjected and are subjecting the Plaintiff to:

a. Denial of equal protection of law in contravention of 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution;

b. Denial of Rights of Expression, Communication and Association in contravention of 42 U.S.C. §1983 and the First, Fourth and Fourteenth Amendments to the United States ~~XXXX~~ Constitution;

c. Denials of Plaintiff's religious rights in contravention of 42 U.S.C. §1983 and the First Amendment freedom of religion right under the U.S. Constitution;

d. Violation to Plaintiff's Fourteenth Amendment equal protection right under the U.S. Constitution;

e. Violations of the Religious Land Use and Institutionalized Persons Act of 2000;

f. Retaliation against ~~XXXXXXX~~ Plaintiff for exercising her Constitutional Rights in contravention of 42 U.S.C. §1983, ~~and~~ in violation of First Amendment right to petition in redress of grievances;

g. Retaliation against Plaintiff for filing a lawsuit, including for exercising right of speech as prohibited by the First Amendment to the ~~XXXX~~ U.S. Constitution and in contravention of 42 U.S.C. §1983 and the First Amendment Right under the U.S. Constitution guarding ~~XXXXX~~ Plaintiff's right to Exercise Right of Speech;

4. That the Court issue preliminary and permanent injunctions assuring that the Plaintiff is accorded all of the rights and privileges of a Jew in captivity; and that her sincerely held religious beliefs be permitted to flourish without significant hampering with respect to their expression and practice;

5. ~~XXXXX~~ Award Plaintiff the costs of suit and reasonable attorney's fees, including ALL costs and expenses incurred on the Plaintiff by this suit; and

12 - B

E. REQUEST FOR RELIEF, Continued

6. Award Plaintiff monetary damages, compensatory and punitive, in ~~the~~ the amount of $50,000.00, including such other and further relief as the Court deems just and proper.

7. Issue an emergency injunction ordering C.D.C.R. to transfer Plaintiff from Mule ~~Creek~~ Creek State Prison, effective immediately. Plaintiff's current Mental Health Team consists of 3 psychologists and 2 psychiatrists, the 2 chief of whom are: Dr. Vhandyla and Dr. Dreies. Aforesaid doctors, both deeply familiar with Plaintiff's Clinical Cave factors, Vtrongly recommend Plaintiff's transfer from MCSP to CORRECTIONAL TRAINING FACILITY, A-Facility, in Voledad, CA at the Level-2 Classification. Order M said injunction to comply with above medical / mental health evaluation.

12 - C

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Your Name, *A. A. ISRAEL*

        Plaintiff,

vs. *RABBI UMMARY,*  No. *2:21-CY-0262-EFB*

Defendant(s), *ET AL.,*

        Defendant(s).        **PROOF OF SERVICE**

_____/

    I, the undersigned, hereby certify that I am over the age of eighteen years and

on _____*October 26th*_____, 20_*21*_, I served a copy of

_*SECOND AMENDED COMPLAINT w/ POV*_

by placing a copy in a postage paid envelope addressed to the person hereinafter listed

by depositing said envelope in the United States Mail:

    *OFFICE OF THE CLERK*
    *UNITED STATES DISTRICT COURT*
    *Eastern District of California*
    *501 "I" St., Suite 4-200*
    *Sacramento, CA 95814*

I declare under penalty of perjury that the foregoing is true and correct.

*NB: PRISON STAFF*
*refused to make Copies*
*of this Complaint.*
*My apologies for any*
*inconvenience this MAY CAUSE*

        (Signed)